

**ORDERED in the Southern District of Florida on January 29, 2024.**

**Corali Lopez-Castro, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:                                                                    Case No. 23-18159-CLC
                                                                          Chapter 15
IDEAL PROTEIN OF AMERICA, INC. *et al.*,[1]

                    Debtors.                                   (Jointly Administered)

_____/

**ORDER (I) RECOGNIZING AND ENFORCING**
**THE CCAA VESTING ORDER, (II) AUTHORIZING**
**AND APPROVING THE SALE OF THE DEBTORS' ASSETS**
**FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES**
**PURSUANT TO 11 U.S.C. § 363, AND (III) GRANTING RELATED RELIEF**

THIS CAUSE came before the Court on January 24, 2024 at 1:30 p.m. upon the *Foreign*

*Representative's Amended Motion for Entry of an Order (I) Recognizing and Enforcing the*

*CCAA Vesting Order, (II) Authorizing and Approving the Sale of the Debtors' Assets Free and*

*Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363, and (III) Granting*

---

1    The Debtors in these chapter 15 cases, along with the last four digits of each Debtor's federal tax identification number, include: Laboratoires C.O.P. Inc. (2513); 9327-6269 Quebec Inc. (6123); Ideal Protein of America Inc. (9434); and Pharmalab Inc. (5123).  The location of the Debtors' service address for purpose of these chapter 15 cases is:  120 NE 5th Avenue, Suite B, Delray Beach, Florida 33483.

*Related Relief* [Docket No. 42]   (the "<u>Motion</u>")[2] of the Foreign Representative of the above captioned debtors (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>") (i) recognizing and enforcing the Canadian Court's order, a copy of which is attached hereto as **<u>Exhibit 1</u>** (the "<u>CCAA Vesting Order</u>"); (ii) approving, under the Bankruptcy Code, the sale of the Vendors' rights, title, and interests in and to the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement free and clear of all liens, claims, encumbrances, except for the Permitted Encumbrances, and other interests; and (iii) granting related relief, all as more fully set forth in the Motion; and upon the Rosenthal Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and sections 109 and 1501 of the Bankruptcy Code; and that this Court having found that venue of these chapter 15 cases is proper pursuant to sections 1501—1503 of the Bankruptcy Code; and this being a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and that adequate and sufficient notice of the filing of the Motion having been given by the Foreign Representative; and this Court having found that the relief requested in the Motion is necessary and beneficial to the Debtors, their estates, their creditors, and other parties in interest; and that no objections or other responses having been filed that have not been overruled, withdrawn, or otherwise resolved; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing

---

2    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby FOUND AND DETERMINED that:

A.        This Court previously entered the Recognition Order [Docket No. 35] on October 30, 2023, where this Court found that the Debtors had satisfied the requirements of, among others, sections 101(23) and (24), 1502(4), 1504, 1509, 1515, 1517, 1520, 1521, and 1522 of the Bankruptcy Code. All such findings by this Court are hereby incorporated by reference herein and such Recognition Order shall continue in effect in all respects except to the extent this Order directly modifies or directly contradicts such Recognition Order.

B.        On August 24, 2023, the Canadian Court granted an order (the "CCAA SISP Approval Order") that, among other things approved the sale and investment solicitation process (the "SISP") for the Debtors in the Canadian Proceedings, and the procedures to implement the SISP (the "SISP Procedures").

C.        On October 30, 2023, the Court entered an order [Docket No. 36] (the "SISP Recognition Order," and together with the CCAA SISP Approval Order, the "SISP Orders") recognizing and enforcing the CCAA SISP Approval Order.

D.        On December 20, 2023, the Canadian Court entered the CCAA Vesting Order, approving, among other things, the sale of the Debtors' rights, title, and interests in and to the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement.

E.        Based on the affidavits of service filed with, and the representations made to, this Court:  (i) notice of the Motion, the Hearing, and the CCAA Vesting Order was proper, timely, adequate, and sufficient under the circumstances of these chapter 15 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy

Rules, and the Local Rules; and (ii) no other or further notice of the Motion, the Hearing, the

CCAA Vesting Order, or the entry of this Order is necessary or shall be required.

F.      This Order constitutes a final and appealable order within the meaning of

28 U.S.C. § 158(a).

G.      The relief granted herein is necessary and appropriate, is in the interest of the

public, promotes international comity, is consistent with the public policies of the United States,

is warranted pursuant to sections 105(a), 363(b), (f), (m) and (n), 365, 1501, 1507, 1520, 1521,

1525, and 1527 of the Bankruptcy Code, and will not cause any hardship to any parties in

interest that is not outweighed by the benefits of the relief granted.

H.      Based on information contained in the Motion, the Rosenthal Declaration and the

record made at the Hearing, the Monitor conducted the SISP to solicit interest in the Purchased

Assets pursuant to the terms of the SISP Orders, and such process was non-collusive, duly

noticed, and provided a reasonable opportunity to make an offer to purchase the Purchased

Assets.   The Foreign Representative and the Monitor have recommended the sale of the

Purchased Assets pursuant to the Asset Purchase Agreement, and it is appropriate that the

Purchased Assets be sold to the Purchaser on the terms and subject to the conditions set forth in

the Asset Purchase Agreement.

I.      Based on information contained in the Motion, the Rosenthal Declaration, and the

record made at the Hearing, the relief granted herein relates to assets and interests that, under the

laws of the United States, should be administered in the Canadian Proceedings.

J.      The Debtors' performance under the Asset Purchase Agreement and related

agreements: (i) constitute a sound and reasonable exercise of the Debtors' business judgment;

(ii) provide value and are beneficial to the Debtors, and are in the best interests of the Debtors,

their estates, and their stakeholders; and (iii) are reasonable and appropriate under the circumstances. The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement constitutes fair consideration and reasonably equivalent value for the Purchased Assets under the Bankruptcy Code and other laws of the United States, any state, territory, possession thereof, or the District of Columbia.

K.    The Purchaser is not, and shall not be deemed to be, a mere continuation, and is not holding itself out as a mere continuation, of any of the Debtors and there is no continuity between the Purchaser and the Debtors. The Proposed Transaction does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and any of the Debtors.

L.    Time is of the essence in consummating the Proposed Transaction. To maximize the value of the Purchased Assets, it is essential that the Proposed Transaction occur and be promptly recognized and enforced in the United States. The Foreign Representative, on behalf of the Debtors, has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Proposed Transaction as contemplated by the Asset Purchase Agreement. Accordingly, there is cause to waive the stay that would otherwise be applicable under Bankruptcy Rules 6004(a) and 6004(h), and accordingly the transactions contemplated by the Asset Purchase Agreement and related agreements can be closed as soon as reasonably practicable upon entry of this Order.

M.    Based upon information contained in the Motion, the Rosenthal Declaration, the other pleadings filed in these chapter 15 cases, and the record made at the Hearing, the Asset Purchase Agreement, and each of the transactions contemplated therein were negotiated, proposed, and entered into by the Debtors and the Purchaser in good faith, without collusion, and from arm's-length bargaining positions. The Purchaser is a "good faith purchaser" within the

meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.   Neither the Debtors, the Foreign Representative, nor the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the Proposed Transaction to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.   The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Purchaser and the Debtors.

N.      The Debtors and the Purchaser did not enter into the Asset Purchase Agreement for the purpose of hindering, delaying, or defrauding any present or future creditors of the Debtors.

O.      The Asset Purchase Agreement requires the assignment of the Assigned Contracts to the Purchaser, which assignment is expressly approved by the CCAA Vesting Order.   Such assignments by order of the Canadian Court require that all monetary defaults by the Vendors under such Assigned Contracts be remedied by payment of cure costs (if any).   As such, enforcement in the United States of the assignment of the Assigned Contracts to the Purchaser does not present any public policy conflict or any issue concerning protection of the interests of the non-Debtor parties to the Assigned Contracts that would prevent this Court from entering this Order.

P.      The Foreign Representative, on behalf of itself and the Debtors, may sell the Purchased Assets free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, encumbrances and other interests of any kind or nature whatsoever against the Debtors or the Purchased Assets, other than the Permitted Encumbrances,

because with respect to each creditor asserting any liens, claims, encumbrances, and other interests, one or more of the standards set forth in sections 363(f)(l)—(5) of the Bankruptcy Code has/have been satisfied. Each creditor that did not object to the Motion is deemed to have consented to the sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances) pursuant to section 363(f)(2) of the Bankruptcy Code.

Q.     The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances.

R.     The transfer of the Vendors' rights under the Assigned Contracts as and to the extent provided in the CCAA Vesting Order is integral to the Asset Purchase Agreement, is in the best interests of the Debtors and their estates, and represents the reasonable exercise of the Debtors' business judgment.

S.     The sale of the Purchased Assets to the Purchaser will be a legal, valid, and effective sale of the Purchased Assets, and will vest the Purchaser with all rights, title, and interests of the Debtors in and to the Purchased Assets, free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances.

T.     The Foreign Representative, the Debtors, and the Monitor, as appropriate, shall: (i) have full power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby; (ii) have all the power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement; and (iii) upon entry of this

Order, other than any consents identified in the Asset Purchase Agreement (including with respect to antitrust matters, if any), need no consent or approval from any other Person (as defined in the CCAA Vesting Order) or governmental unit to consummate the Proposed Transaction.  The Debtors are the sole and rightful owners of the Purchased Assets, no other person has any ownership rights, title, or interests therein, and the Proposed Transaction has been duly and validly authorized by all necessary corporate action of the Debtors.

U.     The Asset Purchase Agreement is a valid and binding contract between the Debtors and the Purchaser and shall be enforceable pursuant to its terms.  The Asset Purchase Agreement, the Proposed Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and the Foreign Representative in these chapter 15 cases and any trustee that may be appointed in any chapter 7 or chapter 11 successor cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

V.     The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the purchase of the Purchased Assets and the related transactions, thus adversely affecting the Debtors, their estates, and their creditors, and other parties in interest, if the sale of the Purchased Assets to the Purchaser was not free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances), or if the Purchaser would, or in the future could, be liable on account of any such lien, claim, encumbrance, or any other interest, including, as applicable, certain liabilities related to the Purchased Assets that will not be assumed by the Purchaser, as described in the Asset Purchase Agreement.

W.     A sale of the Purchased Assets other than free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances) would yield

substantially less value than the sale of the Purchased Assets pursuant to the Asset Purchase Agreement.  Thus, the sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances), in addition to all of the relief provided herein, is in the best interests of the Debtors, their creditors, and other parties in interest.

X.      The interests of the Debtors' creditors in the United States are sufficiently protected.  The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policies of the United States, and warranted pursuant to sections 1521(b) and 1522 of the Bankruptcy Code.

Y.      The legal and factual bases set forth in the Motion, the Rosenthal Declaration, and at the Hearing establish just cause for the relief granted herein.

Z.      Any and all findings of fact and conclusions of law announced by this Court at the Hearing are incorporated herein.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      All objections, statements, or reservations of rights, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled by stipulation filed with this Court, are hereby overruled on the merits.

2.      The CCAA Vesting Order and all of its respective terms, including any immaterial or administrative amendments thereto, including those necessary to give effect to the substance of such order, either pursuant to the terms therein or as approved by the Canadian Court, are fully recognized and given full force and effect in the United States in their entirety.

3.     The Asset Purchase Agreement and the Proposed Transaction contemplated thereunder, including, for the avoidance of doubt, the sale of the Purchased Assets and the transfers of the Purchased Assets and any assets located within the United States on the terms set forth in the Asset Purchase Agreement, the CCAA Vesting Order, including all transactions contemplated thereunder, this Order, including all transactions contemplated hereunder, and all of the terms and conditions of each of the foregoing are hereby approved and authorized pursuant to sections 105, 363, 365, 1501, 1520, 1521, 1525, and 1527 of the Bankruptcy Code. The failure to specifically include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and the Proposed Transaction be authorized and approved in its entirety.

4.     Pursuant to sections 105, 363, 365, 1501, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, the CCAA Vesting Order, and this Order, the Debtors, the Purchaser, and the Foreign Representative (as well as their respective officers, employees, and agents) are authorized to take any and all actions necessary or appropriate to:  (a) consummate the Proposed Transaction, including the sale of the Purchased Assets to the Purchaser, pursuant to the Asset Purchase Agreement, the CCAA Vesting Order, and this Order; and (b) perform, consummate, implement, and close fully the Proposed Transaction, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Proposed Transaction and to take such additional steps and all further actions as may be necessary or appropriate to the performance of the obligations contemplated by the Asset Purchase Agreement, all without further order of the Court, and the Debtors, the Purchaser, and the Foreign Representative are hereby authorized and empowered to cause to be executed

and filed such statements, instruments, releases, and other documents on behalf of such person with respect to the Purchased Assets that are necessary or appropriate to effectuate the Proposed Transaction, any related agreements, the CCAA Vesting Order, and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors or the Purchaser may determine are necessary or appropriate, and are hereby authorized and empowered to cause to be filed, registered, or otherwise recorded a certified copy of the CCAA Vesting Order, this Order or the Asset Purchase Agreement, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and other interests against the Purchased Assets.  The CCAA Vesting Order and this Order are deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

5.      All persons that are currently in possession of some or all of the Purchased Assets located in the United States or that are otherwise subject to the jurisdiction of this Court are hereby directed to surrender possession of such Purchased Assets to the Purchaser on the closing date of the Proposed Transaction (the "Closing Date").

6.      This Court shall retain exclusive jurisdiction to enforce any and all terms and provisions of the CCAA Vesting Order in the United States.

### Treatment of Executory Contracts and Unexpired Leases

7.      Subject to the modification set forth in paragraph 8 below, pursuant to, and to the extent allowed by, the CCAA Vesting Order, the rights and obligations of the Vendors under the

11

Assigned Contracts shall be, notwithstanding any provision contained in any such Assigned Contracts that prohibits, restricts, or conditions assignment or transfer thereof or requires consent of any party to such assignment or transfer (each, an "<u>Anti-Assignment Provision</u>"), assigned to the Purchaser or any affiliate or designee thereof and shall remain in full force and effect for the benefit of the Purchaser or such affiliate or designee in accordance with their respective terms.

8.      Furthermore, for purposes of Assigned Contracts to which the Debtors are party or to which an United States entity is a counterparty, the timeline set forth in paragraph 15 of the CCAA Vesting Order is modified to reflect its commencement within five days of the entry of this Order instead of within five days of the receipt from the Purchaser of a notice of a Proposed Post-Order Assignment (as defined in the CCAA Vesting Order).

9.      Each non-Debtor counterparty to the Assigned Contracts, if any, is prohibited from exercising any right or remedy under the Assigned Contracts by reason of any non-monetary defaults or defaults or events of default arising as a result of the insolvency of any Debtor or the cessation of the Debtors' or their affiliates' normal course business operations, (b) the insolvency of any Debtor or the fact that the Debtors sought or obtained relief under the CCAA or under the Bankruptcy Code, (c) any releases, discharges, cancellations, transactions or other steps taken or effected pursuant to the Asset Purchase Agreement, the Proposed Transaction, the provisions of this Order or any other Order of the Court in these chapter 15 cases, or (d) any change of control of the Debtors or their affiliates arising from the implementation of the Proposed Transaction, or any Anti-Assignment Provision in an Assigned Contract.

10.    This Court shall retain jurisdiction to enforce any and all terms and provisions of the Asset Purchase Agreement, the CCAA Vesting Order, and this Order with respect to the Assigned Contracts in the United States.

<strong><u>Transfer of the Purchased Assets Free and Clear</u></strong>

11.    Pursuant to sections 105(a), 363, 365, 1501, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, on the Closing Date, all rights, title, and interests of the Debtors in the Purchased Assts shall be transferred and absolutely vest in the Purchaser, without further instrument of transfer or assignment, and such transfer shall:  (a) be a legal, valid, binding, and effective transfer of the Purchased Assets to the Purchaser; (b) vest the Purchaser with all rights, title, and interests of the Debtors in the Purchased Assets; and (c) be free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances.

12.    Pursuant to sections 105(a), 363(f), 365, 1501, 1520, 1521, 1525 and 1527 of the Bankruptcy Code, upon the closing of the Proposed Transaction and except with respect to solely Permitted Encumbrances:  (a) no holder of a lien, claim, encumbrance, or other interest shall interfere, and each and every holder of a lien, claim, encumbrance, or other interest is enjoined from interfering, with the Purchaser's rights and title to or use and enjoyment of the Purchased Assets; and (b) the sale of the Purchased Assets, the Asset Purchase Agreement, and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor thereof.  All persons holding a lien, claim, encumbrance, or other interest (other than the Permitted Encumbrances) are forever barred and enjoined from asserting such lien, claim, encumbrance, or other interest (other than the Permitted Encumbrances) against the Purchased Assets, the Purchaser or its affiliates and their respective officers, directors, employees, managers, partners, members, financial advisors,

attorneys, agents, and representatives, and their respective affiliates, successors, and assigns from and after closing of the Proposed Transaction.

13.     Each and every federal, state, and local governmental agency or department is authorized and directed to accept (and not impose any fee, charge, or tax in connection therewith) any and all documents and instruments necessary or appropriate to consummate the sale of the Purchased Assets to the Purchaser and the Proposed Transaction generally.  Effective as of the Closing Date, the CCAA Vesting Order and this Order shall constitute, for any and all purposes, a full and complete conveyance and transfer of the Debtors' interests in the Purchased Assets to the Purchaser free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances.

14.     This Order (a) shall be effective as a determination that, as of the closing date of the Proposed Transaction, all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances, have been unconditionally released, discharged, and terminated as to the Purchaser and the Purchased Assets, and that the conveyances and transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease.  Each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and effect the discharge of all

liens, claims, encumbrances, and other interests other than the Permitted Encumbrances pursuant to this Order and the CCAA Vesting Order and not impose any fee, charge, or tax in connection therewith.

15.     The Purchaser is not and shall not be deemed to:  (a) be a legal successor, or otherwise be deemed a successor, to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or (c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or operations of any or all Debtors.

16.     The Proposed Transaction, including the purchase of the Purchased Assets, is undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorizations provided herein shall neither affect the validity of the Proposed Transaction nor the transfer of the Purchased Assets to the Purchaser free and clear of all liens, claims, encumbrances, and other interests, unless such authorization is duly stayed before the closing of the Proposed Transaction pending such appeal.

17.     Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

18.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

19.     The terms and provisions of the Asset Purchase Agreement, the CCAA Vesting Order, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Purchaser, the Foreign Representative, the Debtors' creditors, and all other parties

15

in interest, and any successors of the Debtors, the Purchaser, the Foreign Representative, and the Debtors' creditors, including any foreign representative(s) of the Debtors, trustee(s), examiner(s), or receiver(s) appointed in any proceeding, including, without limitation, any proceeding under any chapter of the Bankruptcy Code, the CCAA, or any other law, and all such terms and provisions shall likewise be binding on such foreign representative(s), trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their creditors, or any trustee(s), examiner(s), or receiver(s).

20.     Subject to the terms and conditions of the CCAA Vesting Order, the Asset Purchase Agreement, and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and pursuant to the terms thereof, without further order of this Court; *provided* that any such modification, amendment, or supplement does not materially change the terms of the Proposed Transaction, the Asset Purchase Agreement, or any related agreements, documents, or other instruments and is otherwise pursuant to the terms of the CCAA Vesting Order.

21.     The provisions of this Order and the Asset Purchase Agreement are non-severable and mutually dependent.  To the extent that there are any inconsistencies between the terms of this Order and the CCAA Vesting Order, on the one hand, and the Asset Purchase Agreement, on the other, this Order and the CCAA Vesting Order shall govern.

22.     Nothing in this Order shall be deemed to waive, release, extinguish, or estop the Debtors or the Foreign Representative from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset, or counterclaim in respect of any asset or interest that is not a Purchased Asset.

23.     All persons subject to the jurisdiction of the United States are permanently enjoined and restrained from taking any actions inconsistent with, or interfering with, the enforcement and implementation of the CCAA Vesting Order or any documents incorporated by the foregoing.

24.     The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion and the CCAA Vesting Order.

25.     Notwithstanding any provisions in the Bankruptcy Rules to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

26.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

# # #

Submitted by:
Paul Steven Singerman, Esq.
Jordi Guso, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  singerman@bergersingerman.com
        jguso@bergersingerman.com

*(Attorney Singerman is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

**Exhibit 1**

**CCAA Vesting Order**

# SUPERIOR COURT
## (Commercial division)

CANADA
PROVINCE OF QUÉBEC
DISTRICT OF QUÉBEC

N° :    **200-11-028737-230**

DATE :    December, 20th, 2023

---

**PRESIDING :  THE HONOURABLE  MARC PARADIS, J.S.C.**    **(JP 2163)**

---

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT* OF:

**LABORATOIRES C.O.P. INC.**
**PHARMALAB INC.**
**9327-6269 QUÉBEC INC.**
**IDEAL PROTEIN OF AMERICA INC.**

     *Applicants*
and

**ERNST & YOUNG INC.**

     *Monitor*
And

**15563143 CANADA INC.**
**IPC OF AMERICA INC.**
**THE REGISTRAR OF THE REGISTER OF PERSONAL AND MOVABLE REAL RIGHTS (QUÉBEC)**

     *Impleaded parties*

---

### APPROVAL, VESTING AND ASSIGNMENT ORDER

---

[1]    **HAVING READ** the *Application for the Issuance of an Approval, Vesting and Assignment Order and Ancillary Measures* (the "**Application**") of the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, RSC 1985 C-36 (the "**CCAA**"), the exhibits and the affidavit filed in support thereof and the report of the Ernst & Young inc. (the "**Monitor**") dated December 18, 2023;

[2]    **CONSIDERING** the notification of the Application to the service list and to the parties to the Assigned Contracts;

[3]      **GIVEN** the Order Granted by this Court on August 25, 2023, approving the conduct of a sale and investment solicitation process;

[4]      **GIVEN** that it is appropriate to issue an order approving the transaction (the "**Transaction**") contemplated by the *Asset Purchase Agreement* dated December 14, 2023 (the "**APA**"), between Laboratoires C.O.P. Inc. (the "**Canadian Vendor**"), Pharmalab Inc. ("**Pharmalab**") and Ideal Protein of America Inc. (the "**US Vendor**" and together with the Canadian Vendor, the "**Vendors**"), as vendors, and 15563143 Canada Inc. (the "**Canadian Purchaser**") and IPC of America Inc. (the "**US Purchaser**" and together with the Canadian Purchaser, the "**Purchasers**"), as purchasers, a copy of which was filed, *under seal*, as Exhibit R-2 to the Application, and vesting in the Purchasers all of the Debtor's rights, titles and interests in the property identified in **Schedule** "**A**" hereto (the "**Purchased Assets**").

**WHEREFORE THE COURT:**

[5]      **DECLARES** that, unless otherwise indicated or defined herein, capitalized terms used in this Order (the "**Order**") shall have the meanings ascribed to them in **Schedule** "**B**" hereto;

**Notification**

[6]      **ORDERS** that any prior delay for the presentation of this Application is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof;

[7]      **PERMITS** notification of this Order at any time and place and by any means whatsoever, including by email;

**Sale Approval**

[8]      **ORDERS** and **DECLARES** that the Transaction is hereby approved, and the execution of the APA by the Vendors is hereby authorized and approved, with such non-material alterations, changes, amendments, deletions or additions thereto as may be agreed to by the parties thereto and with the consent of the Monitor;

**Execution of Documentation**

[9]      **AUTHORIZES AND DIRECTS** the Vendors and the Purchasers to perform all acts, sign all documents and take any necessary action to execute any agreement, contract, deed, provision, transaction or undertaking stipulated in or contemplated by the APA, with such non-material alterations, changes, amendments, deletions or additions thereto as may be agreed to but only with the consent of the Monitor, and any other ancillary document which could be required or useful to give full and complete effect thereto;

**Authorization**

[10]      **ORDERS** and **DECLARES** that this Order shall constitute the only authorization required by the Vendors and the Purchasers to proceed with the Transaction and any other transaction or steps forming part of the Transaction, and that no shareholder, creditor or regulatory approval, if applicable, shall be required in connection therewith;

200-11-028737-230                                                                                              PAGE : 3

### Vesting of the Purchased Assets

[11]    **ORDERS** and **DECLARES** that, upon the issuance of a Monitor's certificate substantially in the form appended as **Schedule** "**C**" hereto (the "**Certificate**"), (a) all rights, title and interest of the Canadian Vendor in and to the Purchased Assets owned by the Canadian Vendor shall vest absolutely and exclusively in and with the Canadian Purchaser and (b) all rights, title and interest of the US Vendor in and to the Purchased Assets owned by the US Vendor shall vest absolutely and exclusively in and with the US Purchaser, free and clear of and from any and all claims, liabilities (direct, indirect, absolute or contingent), obligations, interests, prior claims, security interests (whether contractual, statutory or otherwise), liens, charges, hypothecs, mortgages, pledges, rights of retention and withdrawal, deemed trusts, assignments, judgments, executions, notices or writs of seizure, notices or writs of execution, notices of sale, options, adverse claims, levies, rights of first refusal or other pre-emptive or contractual rights in favour of third parties, restrictions on transfer of title, or other claims or encumbrances, in each case, whether absolute or contingent and whether or not they have attached or been perfected, registered, published or filed and whether secured, unsecured or otherwise (collectively, the "**Encumbrances**"), including without limiting the generality of the foregoing all Encumbrances ordered by the Court in these proceedings, or evidenced by registration, publication or filing pursuant to the *Civil Code of Québec* or any other applicable legislation in any jurisdiction providing for an Encumbrance in personal or movable property, excluding, however, the permitted encumbrances, easements and restrictive covenants listed on **Schedule** "**D**" hereto (the "**Permitted Encumbrances**") and, for greater certainty, **ORDERS** that all of the Encumbrances affecting or relating to the Purchased Assets, other than the Permitted Encumbrances, be expunged and discharged as against the Purchased Assets, in each case effective as of the applicable time and date of the Certificate;

[12]    **ORDERS** and **DIRECTS** the Monitor, upon receipt of written confirmation from the Vendors and the Purchasers (or their respective counsel) that all conditions of closing in favour of such party have been satisfied or waived, to (a) issue forthwith the Certificate to the Vendors and the Purchasers and (b) file as soon as practicable a copy of the Certificate with the Court;

[13]    **DECLARES** that the Closing will be deemed to have occurred upon the date and time of the issuance of the Certificate;

### Assignment of Contracts

[14]    **DECLARES** that the Purchasers shall be entitled to notify the Monitor in writing within 20 days of the issuance of this Order, that it seeks the post-order assignment of the rights, benefits, obligations and interests of the Vendors under one or more contracts to which one or more Vendors is or are a party to (the "**Proposed Post-Order Assignment**" and each such contract a "**Proposed Post-Order Assigned Contract**");

[15]    **ORDERS** the Monitor, within five days of the receipt from the Purchaser of a notice of a Proposed Post-Order Assignment, to review such assignment, and:

       a.  if the Monitor approves the Proposed Post-Order Assignment, send one or more notices of the Proposed Post-Order Assignment to the parties to the Proposed Post-Order Assigned Contracts substantially in the form of the draft notice of assignment attached as **Schedule** "**F**" hereto (the "**Notice of Assignment**"); or

200-11-028737-230                                                            PAGE : 4

    b.  if the Monitor does not approve the Proposed Post-Order Assignment, inform the
       Purchaser in writing of its decision (the "**Monitor's Notice**").

[16]     **ORDERS** that if, within 10 days of the receipt of the Notice of Assignment, a party to a
Proposed Post-Order Assigned Agreement has not notified and filed with the Court a notice of
opposition to the Proposed Post-Order Assignment, the Monitor shall issue and file with the
Court forthwith a certificate substantially in the form appended as **Schedule** "**G**" hereto (a
"**Post-Order Assignment Certificate**");

[17]     **ORDERS** and **DECLARES** that upon the issuance of a Post-Order Assignment
Certificate by the Monitor, the rights, benefits, obligations and interests of the Vendors under the
contracts mentioned in such Post-Order Assignment Certificate (the "**Assigned Contracts**")
shall be assigned to the Purchasers without any further consents or approvals of this Court,
provided that all monetary defaults of the Canadian Vendor or of the US Vendor, if any and as
applicable, other than those arising by reason only of their insolvency, the commencement of
these proceedings under the CCAA or the failure to perform non-monetary obligations, are
remedied within 10 days of the issuance and filing of the applicable Post-Order Assignment
Certificate;

[18]     **DECLARES** that subject to the Purchaser's obligations relating to the monetary defaults
set forth in paragraph [17], the counterparties to any Assigned Contracts have no right to claim
or effect compensation between:

    a.  on the one hand, the amounts that are owing or which may become owing by
       such counterparties to any of the Vendors, as the case may be, in connection
       with goods supplied or to be supplied under the Assigned Contracts by the
       Vendors or the Purchasers, as the case may be, as and from the date of this
       Order; and

    b.  on the other hand, any amounts owed, or allegedly owed, by the Vendors to such
       counterparties prior to the date of this Order, whether related or not to the
       Assigned Contracts.

[19]     **ORDERS** that any anti-assignment or consent-to-assignment provisions in any Assigned
Contracts shall not restrict, limit, impair, prohibit or otherwise affect the assignment of the
Assigned Contracts, as ordered hereunder;

[20]     **ORDERS** that the Assigned Contracts shall be valid and binding and in full force and
effect and enforceable by the Purchasers in accordance with their terms for the benefit of the
Purchasers;

[21]     **ORDERS** and **DIRECTS** the Monitor to notify a copy of this Order to each of the
counterparties to the Assigned Contracts, by email or by regular mail;

[22]     **AUTHORIZES** the Vendors and the Purchasers to perform all acts, sign all documents
and take any other action that could be required or useful to give full effect to the assignment of
the Assigned Contracts to the Purchasers in accordance with this Order;

[23]     **ORDERS** and **DIRECTS** the Monitor to file with the Court a copy of the Post-Order
Assignment Certificate, forthwith after issuance thereof;

**Cancellation of Security Registrations**

[24]    **ORDERS** the Québec Personal and Movable Real Rights Registrar, upon presentation of the required form with a true copy of this Order and the Certificate, to reduce the scope of the registrations listed in **Schedule** "**H**" hereto in connection with the Purchased Assets in order to allow the transfer to the Purchasers of the Purchased Assets free and clear of such registrations;

[25]    **ORDERS** the Registrar of Trademarks under the *Trademarks Act (Canada)* and the Registrar of Copyrights under the *Copyright Act (Canada)*, upon presentation of a true copy of this Order and the Certificate, to cancel and strike any security interests recorded at the Canadian Intellectual Property Office in respect of the Vendors' trademarks and copyrights, provided the cancellation and striking of such security interests shall not release any collateral other than the Purchased Assets;

[26]    **ORDERS** that upon the issuance of the Certificate, the Purchasers, the Monitor and/or the Vendors shall be authorized to take all such steps as may be necessary to effect the discharge of all Encumbrances registered against the Purchased Assets in any jurisdiction, as may be necessary, from any registration filed against the Vendors, provided that the Vendors or the Purchasers shall not be authorized to effect any discharge that would have the effect of releasing any collateral other than the Purchased Assets, and the Purchasers, the Monitor and/or the Vendors shall be authorized to take any further steps by way of further application to this Court or to a court or tribunal in any other jurisdiction;

**Net Proceeds**

[27]    **ORDERS** that the net proceeds from the sale of the **Purchased** Assets following the payment of the amounts contemplated by the APA and described in the Report (the "Net Proceeds") shall be remitted to **the Monitor** and shall be distributed in accordance with paragraph [28] of the present Order;

[28]    **ORDERS** that for the purposes of determining the nature and priority of the Encumbrances, the Net Proceeds from the sale of the Purchased Assets shall stand in the place and stead of the Purchased Assets, and that upon payment of the Purchase Price (as defined in the APA) by the Purchaser, all Encumbrances shall attach to the Net Proceeds with the same priority as they had with respect to the Purchased Assets immediately prior to the sale, as if the Purchased Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale;

[29]    **ORDERS** that the Monitor shall proceed with the distribution of the Net Proceeds, together with all remaining amounts previously deposited into a bank account opened in the name of the Debtors with Desjardins, as reflected in paragraph 25 of the Amended and Restated Initial Order granted by this Court on August 25, 2023, to Bank of Montreal, the Fédération des Caisses Desjardins and to the other lenders that are party to the Credit Agreement entered into with the Debtors on September 30, 2015 as amended from time to time, in partial payment of the Debtors' obligations thereunder;

200-11-028737-230                                                                PAGE : 6

**Protection of Personal Information**

[30]    **ORDERS** that, pursuant to sub-section 7(3)(c) of the *Canada Personal Information Protection and Electronic Documents Act*, S.C. 2000, c. 5, or any similar provision of any applicable provincial legislation, the Vendors are authorized and permitted, as may be necessary, to disclose and transfer to the Purchaser all human resources and payroll information in the Vendors' records pertaining to the Vendors' past and current employees, as well as all information in the Vendors' records pertaining to direct and indirect clients, patients, clinics, suppliers, vendors, distributors, and other persons with whom the Vendors directly and indirectly do business, wherever situated including in the United States of America. The Purchaser shall maintain and protect the privacy of such information and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Vendors;

**Validity of the Transaction**

[31]    **ORDERS** that notwithstanding:

    a. . the pendency of these proceedings;

    b. any application for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* ("**BIA**") and any order issued pursuant to any such application; or

    c. the provisions of any federal or provincial legislation;

the vesting of the Purchased Assets contemplated in this Order, as well as the execution of the APA pursuant to this Order, are to be binding on any trustee in bankruptcy that may be appointed, and shall not be void or voidable nor deemed to be a preference, assignment, fraudulent conveyance, transfer at undervalue or other reviewable transaction under the BIA or any other applicable federal or provincial legislation, as against the Vendors, the Purchasers or the Monitor;

**Limitation of Liability**

[32]    **PRAYS ACT** of the Monitor's Report and **APPROVES** the activities of the Monitor up until the date of the present Order in connection with the present restructuring proceedings, including the activities of the Monitor described in its Report;

[33]    **DECLARES** that the Monitor has satisfied its obligations pursuant to the CCAA and in compliance with the orders granted by this Court up until the date of the present Order, including the Initial Order;

[34]    **DECLARES** that, subject to other orders of this Court, nothing herein contained shall require the Monitor to occupy or to take control, or to otherwise manage all or any part of the Purchased Assets. The Monitor shall not, as a result of this Order, be deemed to be in possession of any of the Purchased Assets within the meaning of environmental legislation, the whole pursuant to the terms of the CCAA;

200-11-028737-230                                                              PAGE : 7

[35]    **DECLARES** that no action lies against the Monitor, including by reason of this Order or the performance of any act authorized by this Order, except for claims arising out of the gross negligence or wilful misconduct of the Monitor, and in any event, all such action may only be commenced with leave of the Court. The entities related to the Monitor or belonging to the same group as the Monitor shall benefit from the protection arising under the present paragraph;

**General**

[36]    **ORDERS** that the APA (Exhibit R-2) be kept confidential and under seal until (a) the closing of the Transaction or (b) further order of this Court;

[37]    **DECLARES** that this Order shall have full force and effect in all provinces and territories in Canada;

[38]    **DECLARES** that the Applicants, the Purchaser or the Monitor shall be authorized to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America, or elsewhere, for orders which aid and complement the present Order, or in view of executing or recognizing same, including pursuant to Chapter 15 of the U.S. Bankruptcy Code. All courts and administrative bodies of all such jurisdictions are hereby respectfully requested to make such orders and to provide such assistance to the Applicants, the Purchaser or the Monitor as may be deemed necessary or appropriate for the purposes of implementing, recognizing or executing the present Order;

[39]    **REQUESTS** the aid and recognition of any court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order;

[40]    **ORDERS** the provisional execution of the present Order notwithstanding any appeal and without the requirement to provide any security or provision for costs whatsoever;

[41]    **THE WHOLE WITHOUT LEGAL COSTS.**

MARC PARADIS, J.C.S.

**Me François Alexandre Toupin**

*McCarthy Tétrault*

*Pour les débitrices*

**200-11-028737-230**                                                    PAGE : 8

**Me Nicolas Mancini**
**Me Luc Béliveau**
*Fasken Martnieau Du Moulin*

*Pour le contrôleur*

**Me Danny Duy Vu**
*Sitikeman Elliot*

*Pour mises en cause*

**Me Chloé Sévigny**
*Justice Canada*

*Pour le Procureur général du Canada*

**Me Adam Spiro**
*Spiegel Sohmer*

*Pour Bariatrix Nutrition inc.*

**Date de l'audience : 19 décembre 2023**